**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT ASHLAND**

CIVIL ACTION NO. 10-11-DLB

GALEN VALLANCE                                                                                         PLAINTIFF

VS.                             <u>MEMORANDUM OPINION AND ORDER</u>

ASHLAND HOSPITAL CORPORATION, d/b/a                                                 DEFENDANT
KING'S DAUGHTERS MEDICAL CENTER

\* \* \* \* \* \* \* \* \*

Plaintiff Galen Vallance commenced this action against his employer, Defendant Ashland Hospital Corporation, d/b/a King's Daughters Medical Center ("KDMC"), alleging a breach of duty arising out of the collective bargaining agreement ("CBA") between his union, District 1199/SEIU WV/KY/OH ("Union")*,* and Defendant.  Specifically, Plaintiff alleges that Defendant breached its duty when it demoted Plaintiff to a different position and reduced his pay.  Plaintiff initially filed this action in Boyd County Circuit Court on January 13, 2010. (Doc. # 1-2, at 4).  The case was subsequently removed to this Court pursuant to 28 U.S.C. § 1441(a), because Plaintiff's Complaint is subject to complete preemption under Section 301 of the Labor Management Relations Act of 1947 ("LMRA").

This matter is presently before the Court on cross-motions by the parties, including Plaintiff's Motion for Summary Judgment and Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment.  (Docs. # 22, 24).  The motions have been fully briefed, and the matter is now ripe for review.  (Docs. # 32, 38, 39).  For the reasons set

1

forth below, Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment is **GRANTED** and Plaintiff's Motion for Summary Judgment is **DENIED**.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff began his employment with Defendant in 2004, where he continued to work at least until the time he filed this action. In June 2008, Plaintiff applied for and was promoted to a mechanic position in Defendant's Department of Plant Operations. Plaintiff began this new position on July 20, 2008, working without incident through a ninety-day probationary period, until March 24, 2009, when he was notified by Defendant that he was being demoted to his original position. When Plaintiff was demoted, his pay was decreased from $16.29 per hour to $11.66 per hour, the rate he earned prior to his 2008 promotion.

Plaintiff's 2008 promotion was part of a larger chain of events relating to the mechanic position. Defendant initially opened the mechanic position in the Spring of 2008 in its Department of Plant Operations. Employees, including Plaintiff, bid on the job and were required to take an aptitude test, the Bennett Mechanical Comprehension Test, to determine whether they qualified for the position. Of those who bid on the job and passed the test, Defendant awarded the position to Jamie Moore, the individual with the most seniority. Subsequently, Defendant learned that there had been a mistake in grading Mr. Moore's test and that he had actually failed. As a result, Defendant notified Mr. Moore that he would no longer be awarded the mechanics job. The job was then awarded to Plaintiff, the most senior bidder who passed the test.

Mr. Moore filed a grievance through the Union based on Defendant's determination that he was not qualified for the mechanic position. The grievance was ultimately referred

to arbitration, where the arbitrator sustained Mr. Moore's grievance and ordered Defendant to reinstate Mr. Moore in the mechanic position. In compliance with the arbitrator's order, Defendant reinstated Mr. Moore, but also moved Plaintiff back to his original position and reduced his pay accordingly.

On March 25, 2009, Plaintiff filed a grievance through the Union demanding that he be returned to the mechanic position. Plaintiff's grievance was denied at every step of the grievance process, each time based on Mr. Moore's final and binding arbitration award. The Union subsequently failed to appeal Plaintiff's grievance to arbitration. Plaintiff then filed unfair labor practice charges with the National Labor Relations Board ("NLRB") against Defendant and the Union. Those charges were dismissed by the NLRB on June 17, 2009.

On January 13, 2010, Plaintiff filed his complaint in Boyd County Circuit Court. (Doc. # 1-2, at 3).[1] As a Union Member and employee of Defendant, Plaintiff alleges that he is afforded contractual rights and protections contained in the CBA between the Union and Defendant. Specifically, "pursuant to the contractual agreement . . . , if a Union Member does move from one position to a lower rate of classification, they are entitled to keep the same pay rate." (Doc. #1-2, at 10). Because Defendant moved Plaintiff into a lower-classified job and reduced his pay, Plaintiff alleges that Defendant "breached its duty" to Plaintiff which was the cause-in-fact and proximate cause of Plaintiff's lost wages and job displacement. (Doc. #1-2, at 10).

---

[1] Plaintiff subsequently filed an amended complaint on January 26, 2010 to clarify the name of Defendant. (Doc. #1-2, at 9).

Defendant removed the case to this Court based on federal question jurisdiction. More specifically, Defendant asserted that subject matter jurisdiction exists because Section 301 of the LMRA, 29 U.S.C. § 185, completely preempts Plaintiff's state-law claim. In response to the Court's Order for supplemental briefing, Plaintiff conceded that removal was proper and the District Court has subject matter jurisdiction over this claim. On March 26, 2010, Judge Wilhoit sustained removal of the case, finding that Plaintiff's complaint raises a federal question which gives the Court subject matter jurisdiction. (Doc. # 12). Defendant thereafter filed a motion to dismiss the state-law claim or, in the alternative, summary judgment. Plaintiff also filed a motion for summary judgment.

## ANALYSIS

**1.    Standard of Review**

Defendant has filed a motion to dismiss or, in the alternative, a motion for summary judgment. Defendant asserts grounds of preemption, failure to file within the statute of limitations and failure to exhaust administrative remedies, all of which may be decided on 12(b) motions to dismiss. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985); *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009). However, Defendant has also included additional material in support of its motion and has relied upon materials extrinsic to the Complaint. Therefore, the Court will treat the Defendant's motion as one for summary judgment under Federal Rule of Civil Procedure Rule 56. *See* Fed .R. Civ. P. 12(d); *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004)*; Mays v. Buckeye Rural Elec. Co-op, Inc.*, 227 F.3d 873, 877 (6th Cir. 2002).

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"The moving party bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008). Once the movant has satisfied its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), it must produce evidence showing that a genuine issue remains. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000). If, after reviewing the record as a whole, a rational fact finder could not find for the nonmoving party, summary judgment should be granted. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

Moreover, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

**2.      Section 301 Preemption**

Defendant argues that Plaintiff's state-law claim should be dismissed because it is

preempted by Section 301 of the LMRA. Section 301 preemption not only justifies removal of a state-law claim, but also allows the district court to dismiss the same state-law claim or, alternatively, treat the claim as a Section 301 claim. *Allis-Chalmers*, 471 U.S. at 220; *See also,* e.*g.*, *Lingle v. Norge Div. Of Magic Chef, Inc.*, 486 U.S. 399 (1988) (considering whether it was appropriate to dismiss the state-law claim after it was removed to the district court). In *Allis-Chalmers*, the Supreme Court held that the Wisconsin state-law claim should have been dismissed because it was preempted, or, alternatively, dismissed because the plaintiff was barred from bringing a Section 301 claim for failing to make use of the grievance procedure established by the collective-bargaining agreement. *Allis-Chalmers*, 471 U.S. at 220. *Allis-Chalmers* controls the outcome in this case.

Section 301 of the LMRA states:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

61 Stat. 156, §301, *codified at* 29 U.S.C. § 185(a). The Sixth Circuit explained, "[t]he Supreme Court has interpreted this language to require federal pre-emption of state-law-based actions . . . [when those actions are] are inextricably intertwined with consideration of the terms of the labor agreement." *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 382 (6th Cir. 1991) (citing *Allis-Chalmers Corp.*, 471 U.S. at 213) (internal quotations and citations omitted). The Supreme Court has justified the need for preemption because the subject matter of Section 301 "is peculiarly one that calls for uniform laws. The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and

administration of collective agreements," contrary to the purpose of a federal labor policy. *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103 (1962) (internal citations omitted).

To ensure a uniform federal labor policy, the Supreme Court has made clear that any state-law claim arising from the breach of a collective bargaining agreement is preempted by Section 301 of the LMRA. *Mattis v. Massman*, 355 F.3d 902, 905 (6th Cir. 2004) (citing *Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1329 (6th Cir. 1989) (en banc)). Preemption applies not only to state-law contract claims, but has been expanded by the Supreme Court to include state-law tort claims as well. *Mattis*, 355 F.3d at 905 (citing *Allis-Chalmers Corp.*, 471 U.S. at 213). However, not all state-law tort claims involving a collective bargaining agreement are preempted. *Allis-Chalmers Corp.*, 471 U.S. at 213. Tort claims arising from those rights and obligations that exist independent of a labor contract are not preempted. *Id.* The Sixth Circuit has further held that a tangential relationship with a CBA is insufficient to turn an independent state-law claim into a claim dependent on the labor contract. *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 215 (6th Cir. 1994) (citing *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 800 (6th Cir. 1990)).

The Sixth Circuit has developed a two-step approach to determine whether Section 301 preemption applies. *DeCoe*, 32 F.3d at 216. First, courts must determine whether proof of the state-law claim will require interpretation of collective bargaining agreement terms. *Id.* If so, the claim is preempted. Second, courts "must ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law." *Id.* If the right asserted is created by the collective bargaining agreement, the claim is preempted. *Id.* However, "if the right both is borne of state law and does not invoke

7

contract interpretation, then there is no preemption." *Id.*

Defendant contends that Plaintiff has brought a state-law tort by alleging that Defendant "breached its duty" to Plaintiff under the CBA, which was the cause-in-fact and proximate cause of his lost wages and job displacement. This claim is preempted, according to Defendant, because its resolution is inextricably intertwined with terms of the labor agreement and will require interpretation of the labor agreement. *Allis-Chalmers Corp.*, 471 U.S. at 213; *Lingle*, 486 U.S. at 407. The Court agrees.

Using the two-step approach established by the Sixth Circuit in *DeCoe*, Plaintiff's claim is clearly preempted. Plaintiff's amended complaint alleges "*pursuant* to the contractual agreement between KDMC and the Union, if the Union Member does move from one position to a lower rate of classification, they are entitled to keep the same pay rate." (Doc. #1-2, at 10) (emphasis added). Defendant "breached its duty," according to Plaintiff, "by forcing [Plaintiff] into a lower classified job and decreasing his pay rate as set forth in this pleading." (*Id.*). Plaintiff is essentially raising a state-law tort claim asserting that Defendant breached a duty owed to Plaintiff that was created by the CBA. In order to resolve Plaintiff's claim, the court would be required to interpret the CBA to determine whether Defendant is actually under such a duty. This alone is enough to find that the claim is completely preempted by Section 301. *DeCoe*, 32 F.3d at 216-17; *Mattis*, 355 F.3d at 906. Furthermore, the duty that Plaintiff alleges he is owed by Defendant arises "pursuant to the [CBA]," acknowledging that the right is not founded independently in state tort law. This also requires the Court to find that Plaintiff's complaint is preempted. *DeCoe*, 32 F.3d at 216-17. In short, Plaintiff's complaint is completely dependent on the meaning and interpretation of the CBA.

Plaintiff acknowledges in his Motion for Summary Judgment that his claim is dependent on and requires an interpretation of the CBA. Plaintiff concedes that "the language and meaning of the CBA is the crux of this action" and asks the court to "apply reasonable meaning to the terms of the collective bargaining agreement along with basic accepted principles of contract construction." (Doc. #22-13, at 5). Plaintiff suggests that the Court should construe several provisions of the CBA to mean that Defendant was under the duty to keep Plaintiff's pay rate at the higher classification rate although he was demoted. This argument shows that the right asserted is derived solely from the contract and any assessment of liability will inevitably involve contract interpretation. *See Allis-Chalmers*, 471 U.S. at 218. This is exactly the type of state-law claim that the Supreme Court held in *Allis-Chalmers* was completely preempted by Section 301 of the LMRA. *Id.* at 217.

3. **State-law claim treated as Section 301 claim**

While the Supreme Court held in *Allis-Chalmers* that a state-law claim preempted by Section 301 may be dismissed, it alternatively held that the claim may be adjudicated as a Section 301 claim. *Id.* at 220. However, Defendant argues that the Court may not consider Plaintiff's claim as such because he failed to exhaust the grievance process, a prerequisite to filing a claim under Section 301, and failed to file within the applicable statute of limitations. Consistent with the holding in *Allis-Chalmers*, and for the reasons set forth below, the Court will not construe Plaintiff's claim as a Section 301 claim.

An employee may bring a suit under Section 301 of the LMRA against his employer for breaching the collective bargaining agreement. 29 U.S.C. § 185(a). Additionally, the Supreme Court has said that, in certain instances, it is appropriate to construe a state-law

9


claim based on a breach of the collective bargaining agreement as a Section 301 claim. *Allis-Chalmers*, 471 U.S. at 220. Before a Section 301 claim may be filed, however, it is a prerequisite that the employee attempt to exhaust contractual grievance and arbitration procedures. *Id.* at 219 ("If respondent had brought a contract claim under § 301, he would have had to attempt to take the claim through the arbitration procedure established in the collective-bargaining agreement before bringing suit in court."). The Supreme Court explained that it would be improper to allow an employee to sidestep the grievance process and have direct access to the courts. *Republic Steep Corp. v. Maddox*, 379 U.S. 650, 653 (1965). Such access would contravene the overriding purpose of the LMRA to encourage a uniform and exclusive method for orderly settling employee grievances. *Id.*

The Supreme Court has carved out at least two exceptions to this rule. First, an employee may bypass complete exhaustion of the grievance process if he claims that the union wrongfully refused to process his grievance. *Vaca v. Sipes*, 388 U.S. 171, 185 (1967). However, he must have also attempted to exhaust all internal union review procedures that would reactivate the grievance process or award complete relief. *Clayton v. Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of Am.*, 451 U.S. 679, 685 (1981). Second, "where the effort to proceed formally with contractual or administrative remedies would be wholly futile," the employee may also bring suit without first exhausting the grievance process. *Glover v. St. Louis-Francisco Ry. Co.*, 393 U.S. 324, 330 (1969).

Here, Plaintiff does not allege that he exhausted the grievance process before filing his claim with the Court. On April 28, 2009, Plaintiff's grievance was denied at Step 3 of the Grievance Procedure. Under the terms of the CBA, Plaintiff and the Union had twenty

days from that decision to appeal the denial to final and binding arbitration.  However, the grievance was not appealed.  Plaintiff has not alleged circumstances giving rise to the application of either exception.  Plaintiff does not allege that the Union breached its duty to fairly represent him, and likewise does not allege that pursuing the grievance process would have been wholly futile.  Therefore, Plaintiff has not met the prerequisite to filing a Section 301 claim against his employer and has failed to allege facts to meet either exception to the exhaustion requirement.  As a result, it is improper for this Court to construe his claim as a Section 301 claim, and the claim will be dismissed pursuant to the holding in *Allis-Chalmers*.

Moreover, even if Plaintiff's claim was construed as a Section 301 claim, it would be barred by the applicable statute of limitations.  Although Section 301 does not contain a statute of limitations, the Supreme Court has applied the six month period of Section 10(b) of the NLRA to suits brought by an employee against his or her employer for breach of the collective bargaining agreement.  *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169 (1983).  "[The] claim accrues . . . when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *Robinson v. Central Brass. Mfg. Co.*, 987 F.2d 1235, 1239 (quoting *Adkins v. Int'l Union of Elec., Radio & Mach. Workers*, 769 F.2d 330, 335 (6th Cir. 1985) (internal quotations omitted)).  Here, Plaintiff states that on or about March 24, 2009, he was notified by Defendant that he was being demoted back to his previous position with a corresponding decrease in pay. (Doc. #1-2, at 5).  Plaintiff also had notice on May 19, 2009 that the Union did not appeal his grievance to arbitration.  The Court does not need to determine which date Plaintiff's claim accrued, because the six-month statute of limitations would have

expired for the last possible date, May 19, 2009, on November 19, 2009. This action was not filed until January 13, 2010, and, thus, would be time barred even if it were construed as a Section 301 claim.

## CONCLUSION

The Court concludes that Plaintiff's state-law claim is preempted by Section 301 of the LMRA because it is entirely dependent on an interpretation of the CBA and the rights claimed by Plaintiff arise solely out of the CBA.  Consistent with the Supreme Court's holding in *Allis-Chalmers*, Plaintiff's claim is therefore dismissed.  Further, it is improper for the Court to consider Plaintiff's claim as a Section 301 claim because Plaintiff failed to exhaust the grievance process provided in the CBA.  Even if the Court were to construe Plaintiff's claim as a Section 301 claim, it would still be barred by the six-month statute of limitations.  Accordingly,

**IT IS ORDERED** as follows:

(1)   Defendant's Motion to Dismiss or, in the alternative, Motion for Summary Judgment (Doc. # 24) is hereby **GRANTED**; and

(2)   Plaintiff's Motion for Summary Judgment (Doc. # 22) is hereby **DENIED**.

This 23rd day of September, 2011.



Signed By:
*David L. Bunning*
**United States District Judge**

G:\DATA\Opinions\Ashland\0-10-11 MOO Granting MTD.wpd